## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

_____
                                        )
**MEGGAN A. MORROW,**                   )
                                        )
    **Plaintiff,**                      )
                                        )
    **v.**                              )          **CIVIL NO. 3:08CV132**
                                        )
**UNITED STATES OF AMERICA**            )
                                        )
    **Defendant.**                      )
_____)

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Motion to Dismiss of Defendant United States ("Defendant") (docket entry no. 5). The matter has been fully briefed and oral argument has been entertained. The matter is therefore ripe for resolution. For the reasons discussed below, this Court RECOMMENDS that Defendant's Motion to Dismiss be DENIED.

### I.  Standard of Review

When considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Martin, 980 F.2d at

952 (citing 5A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (1990)).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  In <u>Bell Atlantic Corp.</u>, the Supreme Court noted that a complaint need not assert "detailed factual allegations," but it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  127 S. Ct. at 1964-65 (citations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>id.</u> at 1965 (citation omitted), to one that is "plausible on its face," <u>id.</u> at 1974, rather than "conceivable."  <u>Id.</u>  In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must allege facts sufficient to state the substantive elements of her claim.  See <u>Iodice v. United States</u>, 289 F.3d 270, 280 (4th Cir. 2002)).

In this case, Defendant attached to its motion a document it characterizes as the statement of Plaintiff Meggan A. Morrow ("Plaintiff") to the Virginia State Police ("VSP") made on or about August 23, 2005 ("VSP document").[1]  (Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 3.)  Generally, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, when the parties attach documents "'integral to and explicitly

_____

[1] Defendant argues alternatively that should the Court convert its 12(b)(6) motion to a motion for summary judgment in light of the VSP document, the motion for summary judgment should be granted.  (Def.'s Mem. at 3.)

2

relied on in the complaint,'" and when the opposing party "'do[es] not challenge [the documents'] authenticity,'" the court may consider the documents without converting the motion into one for summary judgment.  <u>Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004) (quoting <u>Phillips v. LCI Int'l, Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999)).  The court may also consider, in regard to motions to dismiss, documents that are official public records.  <u>See</u> <u>Witthohn v. Fed. Ins. Co.</u>, No. 05-1378, 2006 WL 228621, at *1 (4th Cir. Jan. 31, 2006); <u>Gasner v. County of Dinwiddie</u>, 162 F.R.D. 280, 282 (E.D. Va. 1995).

The VSP document appears to be notes from an interview of Plaintiff conducted by federal agents regarding the subject July 22, 2005, incident when William Carter Harden ("Harden"), then a Special Agent with the United States Drug Enforcement Agency ("DEA"), allegedly assaulted her.  (Def.'s Mem., Ex. 1.)  Defendant asserts that because Plaintiff refers to the statement in her Complaint, the Court may consider it without turning Defendant's motion to dismiss into one for summary judgment.  (Def.'s Mem. at 3.)  Plaintiff, however, challenges the authenticity of the document because it is not signed, bears no indicia of authenticity, and is not accompanied by a sworn affidavit.  (Mem. of Points & Authorities in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Mem.") at 10.)

In fact, the VSP document is not "integral to" or "explicitly relied on" by Morrow in her Complaint.  <u>See</u> <u>Am. Chiropractic Ass'n, Inc.</u>, 367 F.3d at 234.  At most, Morrow makes a generalized reference to "numerous occasions" wherein "agents debriefed" her.  (Compl. ¶ 32.) Furthermore, Defendant has failed to affirm the authenticity of the VSP document.  (Pl.'s Mem.

3

at 6.)  Moreover, the VSP document is not an official public record.  (Def.'s Mem., Ex. 1.)[2]

Additionally, if the VSP document is considered, it would not change the Court's conclusion

regarding Defendant's motion.[3]  Accordingly, this Court RECOMMENDS that the VSP

document be excluded from the record and that the trial court only construe Defendant's motion

as a motion to dismiss under Rule 12(b)(6).

## II. Facts and Procedural History

When evaluating a motion to dismiss for failure to state a claim, the plaintiff's well-

pleaded allegations are taken as true.  Mylan Labs., 7 F.3d at 1134.  Accordingly, the following

facts are presented as alleged in Plaintiff's Complaint.

On May 12, 2005, Plaintiff was living with her child and the father of her child,

Christopher Sandridge ("Sandridge"), in a motel in Warrenton, Virginia.  (Compl. ¶ 10.)  DEA

agents arrested Sandridge at the motel on charges of drug distribution.  (Compl. ¶ 11.)  The DEA

agents did not arrest Plaintiff.  (Id.)  Instead, Plaintiff agreed to cooperate with the agents to

conduct undercover drug transactions.  (Compl. ¶¶ 11-13.)  During June and July of 2005,

---

[2] The VSP document states, "this document . . . is the property of the Virginia State Police . . . ; it and its contents are not to be distributed outside your agency."  (Def.'s Mem., Ex. 1.)

[3] At this stage, the central issue guiding consideration of Defendant's motion to dismiss is whether Harden was acting within the scope of his employment when he assaulted Plaintiff.  The parties do not dispute that Harden assaulted Plaintiff on July 22, 2005, or that the incident occurred when Harden was on duty as a DEA Special Agent at that time.  The Complaint states Harden was on duty, and the VSP document arguably indicates he was on duty because Plaintiff asked him to transport her so she could contact the VSP officer involved to arrange a confidential informant purchase.  The specific factual differences, if any, between the Complaint and the VSP document would not change the Court's analysis of the scope of employment issue.

4

Plaintiff met with and assisted DEA agents with her cooperation, including Harden.  (Compl. ¶¶ 13-14.)

On July 20, 2005, Morrow pled guilty to conspiracy to distribute a controlled substance. (Compl. ¶ 15.)  Based on the government's representation that Plaintiff was assisting law enforcement, the Court ordered her to self-report to commence serving a period of confinement on July 29, 2005.  (Compl. ¶ 15.)  On July 22, 2005, Plaintiff was scheduled to meet with DEA and VSP agents pursuant to her agreement to cooperate with law enforcement efforts.  (Compl. ¶ 18.)  Harden was responsible for transporting Plaintiff to the meeting.  (Id.)  When Harden arrived to transport Plaintiff to VSP headquarters, he wore work attire and carried his badge, government-issued firearm, and cellular phone.[4]  (Compl. ¶ 19.)  While searching Plaintiff in the vehicle, Harden touched Plaintiff's breasts in a sexually aggressive and unwanted manner. (Compl. ¶¶ 20, 42.)  Plaintiff also asserts that Harden gave her marijuana and "Philly blunts" to use as wrappers for marijuana cigarettes.  (Compl. ¶ 22.)

Approximately one-half mile from VSP headquarters, at a motel in Glen Allen, Virginia, Harden stopped and rented a room.  (Compl. ¶¶ 23-24.)  In the room, Harden told Plaintiff to smoke some marijuana in order to "relax."  (Compl. ¶ 25.)  While Plaintiff was smoking the "joint," Harden went into the bathroom, and emerged wearing only a bath towel, telling Plaintiff that he wanted her to "do something" for him.  (Id.)  Harden then told Plaintiff that he was

_____

[4] At oral argument, the United States contended that Harden was transporting Plaintiff to a friend's house for a purpose unrelated to his position as a law enforcement officer.  The Complaint, however, alleges that Harden was to transport Plaintiff to VSP headquarters to meet with DEA and VSP agents.  (Compl. ¶ 18.)  The plaintiff's well-pleaded allegations are taken as true at this stage, accordingly, the Court must accept Plaintiff's allegations in evaluating the motion to dismiss.  See Mylan Labs., 7 F.3d at 1134.

capable of keeping her out of jail, and that he could advise federal authorities of the DEA's need for her continued cooperation as an informant so that she did not have to surrender herself to commence serving the proscribed period of confinement as scheduled.  (Id.)  Harden then made multiple phone calls to federal prosecutors and parties he purported were federal authorities, in an attempt to delay the date Plaintiff was to self-surrender.  (Id.)

Harden then demanded oral sex from Plaintiff.  (Compl. ¶ 26.)  Plaintiff asked to leave the motel room, but Harden prevented her from doing so.  (Compl. ¶ 27.)  Plaintiff then acquiesced to Harden's demand for oral sex.  (Compl. ¶ 28.)

Following the events of July 22, 2005, Plaintiff continued to cooperate with federal authorities.  (Compl. ¶ 31.)  Plaintiff also reported the events of July 22, 2005, and the DEA began an administrative investigation of Harden.  (Compl. ¶ 32.)  Pursuant to the investigation, Plaintiff was required, repeatedly, to recount to male agents the sordid particulars of the events of July 22, 2005.  (Id.)  Also pursuant to the investigation, Plaintiff was required to place recorded phone calls to Harden in an effort to engage him in conversation about the events of July 22, 2005.  (Id.)  Harden initially denied to authorities any sexual activity with Plaintiff. (Compl.  ¶ 33.)  Moreover, in an attempt to conceal the events of July 22, 2005, Harden returned multiple times to the motel and tried to persuade the motel's personnel to withhold information from the investigators.  (Id.)

Harden pled guilty to and was convicted of lying to federal authorities.  (Compl. ¶ 37.) Plaintiff alleges that Harden's misconduct was "tacitly encouraged" by the "permissive atmosphere" of the DEA, and that Harden did not fear criminal repercussions for his mistreatment of Plaintiff.  (Compl. ¶ 36.)

On February 27, 2008, Plaintiff initiated this litigation pursuant to the Federal Tort Claims Act ("FTCA") on the basis that Harden was acting within the scope of his employment when he assaulted her. (Compl. ¶ 40.) Plaintiff asserts three counts against the United States. (Compl. ¶¶ 41-49.) The first count alleges that the United States is liable for the assault and battery arising from the unwanted touching of Plaintiff's breasts by Harden. (Compl. ¶ 42.) The second count is based on Harden's assault and battery of Plaintiff related to the coerced oral sex that occurred in the motel room. (Compl. ¶ 44.) The third count alleges false imprisonment arising from Plaintiff's forced captivity in the motel room. (Compl. ¶¶ 46-48.) Plaintiff seeks compensatory damages in the amount of $350,000.00, costs of the suit, reasonable attorneys' fees and costs, and such other relief as deemed appropriate by the Court. (Compl., Prayer for Relief.)

### III. <u>Analysis</u>

Generally, to overcome a defendant's 12(b)(6) motion, the plaintiff must "allege facts sufficient to state all the elements of her claim." <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2002) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002)). Plaintiff pursues her claim pursuant to the FTCA, which vests the district courts with exclusive jurisdiction over "civil actions on claims against the United States, for money damages, . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1).

The core issue before the Court is whether Harden acted within the scope of his employment when he assaulted Plaintiff. (Def.'s Mem. at 5; Pl.'s Mem. at 11.) Defendant avers

7

that its 12(b)(6) motion should be granted because Harden obviously acted outside the scope of his employment when he sexually assaulted Plaintiff on July 22, 2005.  (Def's Mem. at 1.)

Scope of employment is determined by the respondeat superior doctrine of the state in which the wrongful conduct occurred.  See Johnson v. Carter, 983 F.2d 1316, 1322 (4th Cir. 1993).  Pursuant to the Virginia doctrine of respondeat superior, "an employer is liable for the tortious acts of its employee if that employee was performing the employer's business and acting within the scope of the employment when the tortious acts were committed."  Giant of Md., Inc. v. Enger, 515 S.E.2d 111, 112 (Va. 1999) (citations omitted).  Generally, Virginia law maintains a broad view of the doctrine, maintaining that even intentional torts may be committed within the scope of employment.  See Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1156 (4th Cir. 1997).

The case before the Court involves the commission of intentional, criminal activity by Harden.[5]  The Virginia Supreme Court has noted that it can be difficult for the court to determine whether the employee was acting within the scope of employment in cases involving intentional torts or criminal acts.  See Gina Chin & Assocs., Inc. v. First Union Bank, 537 S.E.2d 573, 578 (Va. 2000) ("Admittedly, the [] court's task may be particularly difficult in cases in which the injury is caused by an intentional, often criminal, tortious act which clearly would not have been contemplated by the employer as being within the scope of employment, but which nonetheless was performed incident to the employment . . . .")  Under Virginia law, the Court must determine whether Harden's assault "'was within the scope of the duties of employment and in the execution of the service for which he was engaged.'"  Commercial Bus. Sys., Inc. v. BellSouth

---

[5]  The parties do not dispute that Harden's assault was criminal.

Servs., 453 S.E.2d 261, 266 (Va. 1995) (quoting Tri-State Coach Corp. v. Walsh, 49 S.E.2d 363,

366 (Va. 1948)); see also Gina Chin, 537 S.E.2d at 578 ("Although the employee's motive was

to advance his self-interest, rather than the self interest of his employer, he was nonetheless

performing his duties . . . in the execution of the services for which he was employed") (internal

quotations omitted); Plummer v. Ctr. Psychiatrists, Ltd., 476 S.E.2d 172, 174-75 (Va. 1996)

(reversing the trial court's determination that psychologist's act of having sex with a patient at

his office fell outside the scope of employment, partly because the "act was committed while he

was performing his duties as a psychologist in the execution of the services for which he was

employed.")

1.      **Defendant has the burden of establishing that Harden was not acting within the scope of his employment.**

Virginia case law consistently holds that once the employer-employee relationship is

established, a rebuttable presumption arises that the employer is responsible.  In other words,

"proof of the employment relationship creates a prima facie rebuttable presumption of the

employer's liability."  Gina Chin, 537 S.E.2d at 577; see also Commercial Bus. Sys., 453 S.E.2d

at 265 ("It is well settled that, when an agency relationship has been proven, the burden is upon

the principal to show that the agent was not acting within the scope of his authority when he

committed the acts complained of . . . ." (citing United Bhd v. Humphreys, 127 S.E.2d 95, 102

(Va. 1962))); Alvey v. Butchkavitz, 84 S.E.2d 535, 539 (Va. 1954)  ("We have repeatedly held

that where the relationship of master and servant has been established the burden is on the master

to prove that the servant was not acting within the scope of his employment when he committed

the act complained of . . . .")  Harden's employment status is not contested.  To prevail on its

12(b)(6) motion, therefore, Defendant must "conclusively establish that [Harden] was not acting

within the scope of his employment when he committed the wrongful acts." <u>Commercial Bus.</u>

<u>Sys.</u>, 453 S.E.2d at 266.

**2.      The motive of the employee is not determinative for respondeat superior liability.**

One factor Virginia courts consider when making this determination is "whether the

employee deviated from the scope of his employment because of an 'external, independent, and

personal motive . . . to do the act upon his own account.'" <u>Gina Chin</u>, 537 S.E.2d at 578 (quoting

<u>Broaddus v. Standard Drug Co.</u>, 179 S.E.2d 497, 503-04 (Va. 1971)).  The United States

contends that Harden acted pursuant to personal, non-DEA motives, and therefore acted outside

the scope of his employment.  (Def.'s Mem. at 7-9.)  In support of this argument, Defendant cites

<u>Jamison v. Wiley</u>, in which the Fourth Circuit affirmed the district court's conclusion that

alleged harassment by a federal employee was not within the scope of his employment where his

actions "were not done with the intent to further the interests" of his employer.  14 F.3d 222, 237

(4th Cir. 1994).

Defendant fails to address, however, those elements of those holdings that address the

role of the employee's motive.  It is clear that "[w]here an employee commits a willful and

wrongful act that results in injury to others, simple logic *suggests* that such employee generally

does not do so 'with the intent to further the employer's interest.'"  <u>Gina Chin</u>, 537 S.E.2d at 541

(holding that "scope of employment" was a jury question when a bank teller purposefully

accepted forged checks, notwithstanding that teller's actions were contrary to bank motives)

(emphasis added); <u>see also</u> <u>Plummer</u>, 476 S.E.2d at 174 (quoting <u>Commercial Bus. Sys.</u>, 453

S.E.2d at 265, and holding that "[t]he test of liability is not the motive of the employee in

committing the act.")  The Fourth Circuit has followed that reasoning in applying Virginia's

respondeat superior doctrine.  See, e.g., Doyle-Penne v. Muhammad, No. 99-2101, 2000 WL

1086906 at *2 (4th Cir. Aug. 4, 2000) ("Virginia law does not focus the scope-of-employment

inquiry on the motive of the employee who committed the tort"); Gulf Underwriters Ins. Co. v.

KSI Servs., 416 F. Supp. 2d 417, 423 (E.D. Va. 2006) (applying Virginia precedent and rejecting

the argument that "because the employee was not motivated by an intent to further [the

employer's] business, the fraud was outside employee's scope of employment").[6]  Accordingly, a

conclusion that Harden's "gross misconduct was not in pursuit of DEA's mission" (Def.'s Mem.

at 8) does not automatically compel a finding that the misconduct was outside the scope of his

employment under Virginia law.

    Although the employee's motive is not determinative, it is also "not irrelevant to the

issue of whether the act was within the scope of employment."  Gina Chin, 537 S.E.2d at 578

("[M]otive is merely a factor to be considered in making that determination."); cf. Gulf

Underwriters, 416 F. Supp. 2d at 422-23 (holding that the court may also consider "the extent to

which the employment situation provided a particular opportunity or incentive for the

commission of the tort").  For example, citing Gulf Underwriters, the Eastern District of Virginia

---

    [6] The court for the Eastern District of Virginia, in Gulf Underwriters, discussed two
approaches in weighing the intentional tortfeasor's motivation in determining the scope of
employer liability: the "employee motivation approach" and the "totality of circumstances"
approach.  416 F. Supp. 2d at 421-22.  Under the totality of circumstances approach, courts
consider the additional factors of whether the employee was on duty at the time of committing
the tortious act, whether the employee committed the tortious act on the employer's premises or
where it would be reasonably expected for the employee to go in the course of performing his
duties, and to what extent the impetus for the tortious conduct was causally related to the
employee's employment.  Id.  After reviewing Virginia respondeat superior precedent, the
Eastern District of Virginia in Gulf Underwriters characterizes the totality of circumstances as
the preferred approach in Virginia.  Id. at 422.

held that a prison guard's employment facilitated his rape of an inmate, and that "[s]uch facts weigh strongly against resolving the scope of employment issue . . . in favor of the [employer]." Heckenlaible v. Va. Peninsula Reg'l Jail Auth., 491 F. Supp. 2d 544, 552 (E.D. Va. 2007). Similarly, here, Harden's position as a DEA agent facilitated his assault of Plaintiff, a DEA informant.  Accordingly, although Harden's motive during the assault was presumably contrary to the DEA's mission, the fact that the assault was facilitated by virtue of his employment supports the conclusion that he acted within the scope of his employment.

**3.     Harden's deviation from his scope of employment must be extreme and unusual in order for the Court to properly grant a 12(b)(6) motion.**

Virginia precedent provides that with respect to determining the scope of employment issue, "[g]enerally, the inferences to be drawn from the established facts are within the province of a jury." Giant of Md., 515 S.E.2d at 112 (citations omitted); see also Gina Chin, 537 S.E.2d at 578 ("unless the deviation from the employer's business is slight on the one hand, or marked and unusual on the other, but falls instead between those two extremes, the question is for the jury"); Marjorana v. Crown Cent. Petroleum, 539 S.E.2d 426, 430 (Va. 2000) ("If the evidence leaves in doubt the question whether the employee acted within the scope of the employment, the issue is to be decided by the jury and not as a matter of law by the trial court").  Thus, the court must decide whether as a matter of law, Harden's deviation was so great and unusual as to warrant the motion to dismiss.

Taking as true the factual allegations in the Complaint, Harden's transport of Plaintiff on July 22, 2005, was a customary duty he performed as a DEA agent.  (Compl. ¶ 17.)  Harden was on duty, had an official vehicle for transporting Plaintiff, searched Plaintiff, and called prosecutors and others to negotiate additional time for her to surrender to being serving her

prescribed sentence of confinement.  (Pl.'s Mem. at 14.)  Such activities were routine in Harden's capacity as a DEA agent acting on behalf of his employer.  Accordingly, under Virginia law, Defendant cannot prove *as a matter of law* that the subsequent assault did not occur in the execution of the service for which Harden was employed.

Viewing the factual allegations contained in the Complaint in a light most favorable to Plaintiff, as the Court must, Harden's deviation from the DEA's prescribed mission appears to lie between the two extremes of a slight and unremarkable deviation and a great and unusual deviation.  Defendant has not demonstrated, *as a matter of law*, that Harden's actions were within the scope of the duties of his employment and in the execution of the service for which he was employed.  Thus, at this stage, Defendant cannot conclusively establish that Harden was not acting within the scope of his employment when he assaulted Morrow.  Accordingly, Plaintiff's allegations are sufficient to render a motion to dismiss on the issue of *respondeat superior* inappropriate at this stage.

### IV.  Conclusion

Based on the foregoing analysis, this Court RECOMMENDS that Defendant's Motion to Dismiss (docket entry no. 5) be DENIED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert

E. Payne, and to all counsel of record.


                                                     /s/

                                             Dennis W. Dohnal

                                             United States Magistrate Judge

Richmond, Virginia
Date:  August 20, 2008